UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NARCISCO ROBERT ESPINOZA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | Case  No. CV 09-9499 AJW<br><br>MEMORANDUM OF DECISION |

  Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

  Plaintiff filed his applications for benefits on September 13, 2007, alleging disability since January 1, 2007 due to bipolar disorder, sleep disturbance, anxiety, neuropathy of the left leg, and migraines. [JS 1-2]. In an August 3, 2009 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of a mood disorder and history of substance abuse. [Administrative Record ("AR") 16]. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

to perform work available in significant numbers in the national economy. [AR 17].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Nonexamining physician**

Plaintiff contends that the ALJ's decision is erroneous and is not based on substantial evidence because the ALJ made inconsistent findings with respect to the nonexamining source medical opinion and improperly rejected part of that opinion. [See JS 2-11].

On November 29, 2007, state agency medical consultant Judith McGee, Ph.D. completed a Psychiatric Review Technique ("PRT") form [AR 189-199] and a Mental Residual Functional Capacity Assessment. [AR 200-202]. Dr. McGee provided the only medical opinion regarding plaintiff's mental functional capacity in the record.

On the PRT form, Dr. McGee found that plaintiff had an affective disorder, specifically, bipolar disorder. [AR 189, 192]. For purposes of applying the criteria in the Listing of Disorders, Dr. McGee indicated that plaintiff had moderate restrictions of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated, extended episodes of decompensation. [AR 197]. On the PRT form, Dr. McGee briefly summarized the

1    medical evidence of record on which her conclusions were based. [See AR 199].

2    　　　On the mental RFC assessment form, a "check the box" form for rating plaintiff's work-related
3    mental functional abilities, Dr. McGee indicated that plaintiff was "not significantly limited" in the ability
4    to remember locations and work-like procedures; understand and remember very short and simple
5    instructions; carry out very short and simple instructions; perform activities within a schedule, maintain
6    regular attendance, be punctual within customary tolerances; sustain an ordinary routine without special
7    supervision; make simple work-related decisions; respond appropriately to changes in the work setting; be
8    aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public
9    transportation; and set realistic goals or make plans independently of others. [AR 200-201].

10   　　　Dr. McGee indicated that plaintiff was "moderately limited" in the ability to understand and
11   remember detailed instructions; carry out detailed instructions; maintain attention and concentration for
12   extended periods; work in coordination with or proximity to others without being distracted by them;
13   complete a normal workday and workweek without interruptions from psychologically based symptoms;
14   perform at a consistent pace without an unreasonable number and length of rest periods; interact
15   appropriately with the general public; ask simple questions or request assistance; accept instructions from,
16   and respond appropriately to, criticism from supervisors; get along with coworkers or peers without
17   distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to
18   basic standards of neatness and cleanliness. [AR 201]. Under "Remarks," Dr. McGee added, "Claimant
19   retains the ability to understand and remember simple instructions. Limited social interaction is indicated."
20   [AR 201].

21   　　　During the hearing, the ALJ posed a hypothetical question to the vocational expert concerning a
22   person who matched plaintiff's vocational profile and retained the RFC for work at all exertional levels that
23   was routine, repetitive, entry-level, minimally stressful, required no contact with the public, and required
24   only superficial interpersonal contact with co-workers and supervisors. [AR 35]. The vocational expert
25   testified that such a person could perform the unskilled jobs of warehouse worker, cleaner, and hand packer.
26   [AR 36-37]. Plaintiff's counsel then asked the vocational expert if "a company would be likely to keep [a
27   person] on as a worker" if that person was moderately limited in all ten of the areas indicated by Dr. McGee.
28   [AR 37-38]. The vocational expert responded: "To be honest, I get concerned when there are that many

1  moderate limitations.  A couple of moderate limitations doesn't concern me, but with that many, I would
2  be concerned about an ability to maintain employment on an ongoing basis." [AR 38].

3        In his written decision, the ALJ noted that he was required to consider the state agency medical
4  consultants' opinions, and that those opinions "can be given weight insofar as they are well supported by
5  evidence in the case record as a whole." [AR 18 (citing Social Security Ruling 96-6p)].  The ALJ stated that
6  "the State Agency consultants [sic] determined that the claimant retained the ability to understand and
7  remember simple instructions with limited social interaction indicated.  The undersigned finds the opinions
8  of the State Agency consultants [sic] to be consistent with the objective evidence of record for the period
9  of issue." [AR 18 (citing AR 189-202)].  Elsewhere, the ALJ added that he "rejects the assessment of
10  multiple moderately impaired mental functions" on Dr. McGee's mental RFC assessment "as incompatible
11  with the medical records and the claimant's testimony and with the ultimate State Agency conclusion that
12  the claimant can do simple[,] routine[,] and repetitive nonpublic tasks . . . ." [AR 19].

13        Plaintiff's contention that the ALJ made inconsistent findings lacks merit.  Initially, the ALJ said
14  that Dr. McGee's opinion was consistent with the objective evidence.  However, the ALJ was referring only
15  to Dr. McGee's finding that plaintiff retained the ability to "understand and remember simple instructions
16  with limited social interaction," not to her opinion as a whole. [AR 18].  Subsequently, the ALJ said that he
17  rejected the moderate mental functional limitations assessed by Dr. McGee as incompatible with the medical
18  records, plaintiff's testimony, and Dr. McGee's "ultimate . . . conclusion" that plaintiff can perform simple,
19  routine, and repetitive nonpublic tasks. [AR 19].

20        Citing Dr. McGee's remark that plaintiff can "understand and remember simple instructions with
21  limited social interaction," plaintiff also argues that the ALJ "failed to make a distinction between
22  understanding and remembering simple instructions and actually performing those instructions on a
23  sustained basis in a competitive work environment." [JS 3].  Plaintiff's first point—that understanding or
24  remembering instructions is not the same as carrying them out—is legitimate, but does not carry the day.
25  Although Dr. McGee mentioned only "understanding" and "remembering" simple instructions in the
26  "Remarks" section, she checked boxes indicating that plaintiff could do that and more: she could
27  understand, remember *and carry out* very short and simple instructions, remember work-like procedures,
28  adhere to a schedule, maintain regular attendance, be punctual, perform an ordinary routine without special

4

supervision, make simple work-related decisions, respond appropriately to changes in the work setting, be aware of and take precautions against normal hazards, travel in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others. [AR 200-201].

In her notes on the PRT form, Dr. McGee reported plaintiff's subjective allegations that he locked himself in his room, came out to eat occasionally, rarely sleeps, is usually manic, wears the same clothes repeatedly, bathes once a week, can't focus for long or on just one thing, gets angry, has mood swings that scare others away, and had problems with memory, stress, and panic attacks. [AR 199]. Dr. McGee also briefly summarized plaintiff's medical records from May 2007 through September 2007, including notations that he reported increased symptoms when not taking his medications as prescribed. [AR 199]. She concluded that "records note symptoms improve with meds. Being comfortable with social interaction does not appear to improve, however." [AR 199].

Viewed in the context of her assessments as a whole, it appears that Dr. McGee's statement that plaintiff retained the ability to "understand and remember simple instructions" with "limited social interaction" was simply a shorthand reference to, or a summary of, her findings. Therefore, the ALJ did not err in concluding that Dr. McGee opined that plaintiff can understand, remember, and carry out simple instructions. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences 'logically flowing from the evidence.'") (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)).

Plaintiff next argues that the ALJ's RFC is erroneous and not supported by substantial evidence because he did not articulate specific, legitimate reasons for rejecting the uncontradicted opinion of Dr. McGee regarding plaintiff's moderate functional limitations, and because the vocational expert had "concerns" about whether a person with those limitations could sustain employment.

> An ALJ is
> not bound by any findings made by State agency medical or psychological consultants . . .
> . State agency medical and psychological consultants . . . are highly qualified physicians,
> psychologists, and other medical specialists who are also experts in Social Security disability
> evaluation. Therefore, administrative law judges must consider findings and other opinions
> of State agency medical and psychological consultants and other program physicians,

5

psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled. [¶] The administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (e) of [20 C.F.R. §§ 404.1527, 416.927], such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . ., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . . .

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also SSR 96-6p, 1996 WL 374180, at *1-*2; Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir.2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").

The ALJ was not bound by Dr. McGee's uncontradicted opinion. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Accordingly, he did not err in accepting her opinion in part and rejecting it in part.[1]

Furthermore, the ALJ explained that he based his evaluation of Dr. McGee's opinion on plaintiff's medical records and testimony. The ALJ noted that plaintiff testified that he was taking Seroquel, which was "helping [him] a lot" and had "been a real good drug for [him]." [AR 18-19, 29]. See Sample, 694 F.2d at 642 (holding that the ALJ permissibly rejected a medical disability opinion based on the claimant's testimony that "his emotional impairment 'is minimized' if he takes his medication"). However, plaintiff

---

[1] Although the ALJ said that he rejected "multiple moderately impaired mental functions" on Dr. McGee's mental RFC assessment form [AR 19], the ALJ did not totally ignore those limitations. His finding that plaintiff is restricted to "routine, repetitive, entry-level, minimally stressful" work requiring "no contact with the public" and "only superficial interpersonal contact with co-workers and supervisors" takes into account some degree of limitation in several areas in which Dr. McGee found a moderate limitation, including plaintiff's ability to understand, remember, and carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior. [AR 201].

6

indicated that he had been noncompliant with treatment in the past, such as by failing to take prescribed medications. Plaintiff testified that he had been hospitalized in October 2007, when he was not taking his medications. A 2005 hospitalization (which predated his alleged onset date) occurred while plaintiff was still abusing amphetamines and drinking. [AR 19, 28-31]. He said that he had been sober since 2005. [AR 28].

The ALJ also pointed to plaintiff's testimony that the manager of the transitional housing where plaintiff lived left him in charge during the day. [AR 19]. Plaintiff said that he monitored the house, performed household chores, and interacted with the other residents. [AR 18-19, 33]. In addition, the ALJ noted that although plaintiff alleged that he became disabled in January 2007, he testified that he worked at a temporary job until June 2007, and then worked again at a warehouse for about three months in July, August, and September of 2008. [AR 25-26, 34]. Although the ALJ did not consider those jobs substantial gainful activity, plaintiff's admitted ability to work up to eighteen months after his alleged onset date was inconsistent with the presence of disabling mental functional limitations.

The ALJ also noted that to the extent that the moderate functional limitations assessed by Dr. McGee suggested an inability to sustain any form of employment, they were inconsistent with her "ultimate conclusion" that plaintiff retained the ability to perform a range of simple work. [AR 200-201].

Plaintiff also argues that the ALJ improperly ignored the vocational expert's testimony that he got "concerned when there are that many moderate limitations." [AR 38]. That testimony followed a question by plaintiff's counsel asking the vocational expert to assume that plaintiff was moderately limited in all ten of the functional areas Dr. McGee indicated. [AR 38]. The ALJ was not obliged to consider that testimony. Instead, the ALJ was entitled to rely on the vocational expert's testimony that the hypothetical person described by the ALJ could perform unskilled jobs available in significant numbers in the national economy. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist [in his hypothetical questions], and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [plaintiff] had claimed, but had failed to prove.").

For these reasons, plaintiff's contention that the ALJ improperly evaluated Dr. McGee's opinion lack merit.

**Credibility finding**

Plaintiff contends that the ALJ failed to provide specific, cogent reasons for finding plaintiff's subjective allegations unpersuasive. [JS 11-17].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ articulated legally sufficient reasons for his negative credibility finding. Plaintiff testified that he could not work because his mind was constantly racing, he could not concentrate or focus, he got very easily frustrated, which in turn usually made him angry. He also said that he sometimes "exploded," "acted out," or became "violent," giving the example of an incident of domestic violence for which he had been arrested and spent eight days in jail. [AR 27-28, 31-32]. In his disability report, plaintiff also reported that he had very limited daily activities, locked himself up in his room, and only occasionally went out. [AR 111-118].

The ALJ provided specific, convincing reasons for rejecting the alleged severity of plaintiff's subjective complaints. The ALJ found, and plaintiff does not dispute, that there was no objective evidence

establishing any medically determinable severe physical impairment that was reasonably likely to cause plaintiff's alleged sleep problems, migraines, or left leg neuropathy. [AR 16, 18, 184-186].

The ALJ found that plaintiff had a severe mental impairment, but he gave convincing reasons, based on evidence in the record, for finding that plaintiff's subjective complaints were not fully credible. First, plaintiff continued to work intermittently up to eighteen months after January 1, 2007, his alleged onset date. He held temporary jobs until June 2007 and again from July to September 2008. Plaintiff testified that he left the second job because he was terminated, not because he was disabled. [AR 25-26, 34]. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ did not err in discrediting the claimant's subjective complaints where the claimant testified that he left his job "because he was laid off, rather than because he was injured"); cf. Demaria v. Apfel, 1998 WL 30015, at *5 (N.D. Cal. 1998) (holding that the claimant's admission that he had been actively looking for work was a "tacit admission that [he] could perform substantial gainful activity," and that "[the claimant's] job search efforts discredited his allegations of disability") (citing Sample, 694 F.2d at 642, 643; Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)).

Second, plaintiff testified that he was hospitalized in October 2008 after not taking his medications. His noncompliance was noted in his hospital admission records. However, consistent with his hospital discharge records, plaintiff testified that his condition was stable when he was compliant with treatment. [AR 18, 29, 199, 319-323, 342]. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (stating that "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can "cast doubt on the sincerity of" a claimant's subjective complaints).

Third, plaintiff testified that the manager of his transitional housing worked all day and left plaintiff in charge of monitoring and cleaning the house and interacting with other residents. [AR 18-19, 33]. That testimony is inconsistent with plaintiff's assertion that he had very limited daily activities. Cf. Thomas, 278 at 953, 959 (holding that the ALJ did not err in finding that the claimant's ability to perform chores such as cooking, laundry, washing dishes, and shopping undermined the credibility of her subjective complaints); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]if a claimant is able to spend a substantial part

of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.") (internal quotation marks omitted).

Fourth, the ALJ found that the objective medical evidence did not corroborate the alleged severity of plaintiff's mental symptoms. [AR 19]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Although the ALJ did not cite specific medical records, that conclusion is consistent with medical evidence in the record. [See, e.g., AR 199 (Dr. McGee's notes regarding plaintiff's medical records; AR 263-269 (January 2009 mental assessment containing unremarkable mental status examination report); AR 319-323 (October 2008 behavioral health discharge records)].

Accordingly, the ALJ provided a legally sufficient rationale for his credibility determination.

## Conclusion

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

January 19, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge